JOHN M. FUNK, STATE BAR NO. 204605
ASSISTANT CITY ATTORNEY
CITY OF SANTA ANA
20 CIVIC CENTER PLAZA M-29
P.O. BOX 1988
SANTA ANA, CALIFORNIA 92702
TELEPHONE: (714) 647-5201
FACSIMILE: (714) 647-6515
EMAIL: jfunk@santa-ana.org

Attorneys for Plaintiff
CITY OF SANTA ANA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| City of Santa Ana,<br><br>Plaintiff,<br><br>v.<br><br>County of Orange; City of Dana Point; City of San Clemente; City of San Juan Capistrano; and DOES 1-10.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT BY CITY OF SANTA ANA FOR CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983)**<br><br>**1. Eighth Amendment (Cruel & Unusual Punishment)**<br><br>**2. Fourteenth Amendment (Equal Protection)**<br><br>**3. Fourteenth Amendment (Due Process)** |

For itself, and on behalf of its residents, Plaintiff City of Santa Ana ("Santa Ana"), a charter city and municipal corporation organized and existing under the Constitution and laws of the State of California, alleges the following:

1

# INTRODUCTION

1. Across Orange County, a social crisis has unfolded whereby the number of individuals experiencing homelessness has skyrocketed to unprecedented levels. In January 2017, the Orange County Continuum of Care Point-in-Time Count and Survey found there were 4,792 homeless individuals in Orange County, more than half of whom were unsheltered.

2. Despite recent progress, the crisis shows little signs of abating. For example, according to the April 2019 Orange County Continuum of Care Point-in-Time Count, there were 6,860 homeless individuals in Orange County. Of these, over half, or 3,961, were again unsheltered.

3. Many if not most of these individuals struggle to meet the basic necessities of life, including food, shelter, and health care. They often combat mental illness, substance abuse issues, physical disabilities, or any combination of these afflictions. A significant number are single women and veterans.

4. Social, mental health, and other services provided to homeless individuals by the County of Orange and entities contracting with the County, along with their funding levels, remain inadequate to address the instant and ongoing crisis of homelessness.

5. The Orange County Board of Supervisors has publicly admitted that it has failed to spend tens of millions of dollars available for homeless housing and services for the homeless population in the County.

6. Nowhere in Orange County is there a greater concentration of homeless individuals than in the City of Santa Ana. By the April 2019 Point-in-Time count, there are 1,769 homeless individuals in Santa Ana, 830 of whom are unsheltered. This is by far the largest number in any city in Orange County.

7. As described below, Santa Ana has expended vast efforts and resources to alleviate homelessness but continues to struggle under its impacts.

8. Santa Ana seeks by this Complaint a fair and equitable distribution of responsibilities for homeless services among the County and the cities named as defendants herein, as well as reimbursement and sustained funding by the County for Santa Ana's decades-long efforts to relieve homelessness in Orange County. Recent actions by these parties show that such a result is not likely to be voluntarily achieved.

## THE PARTIES

9. Plaintiff City of Santa Ana is and at all relevant times has been a charter city and municipal corporation organized and existing under the Constitution and laws of the State of California.

10. Defendant County of Orange is and at all relevant times has been a political and geographical subdivision of the State of California having its principal offices in the City of Santa Ana.

11. Defendant City of Dana Point is and at all relevant times has been a general law city operating under the general laws of the State of California.

12. Defendant City of San Clemente is and at all relevant times has been a general law city operating under the general laws of the State of California.

13. Defendant City of San Juan Capistrano is and at all relevant times has been a general law city operating under the general laws of the State of California.

14. Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of DOE defendant 1 through DOE defendant 10, inclusive, and therefore sues these parties under fictitious names, pursuant to Local Civil Rule 19-1. Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal question) and 28 U.S.C. section 1343 (civil rights).

16. Venue is proper in this Court under 28 U.S.C. section 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**BACKGROUND**

17. The City of Santa Ana has a population of approximately 341,000 and covers 27 square miles. It is ethnically diverse with the following make-up: 78% Hispanic, 10% Asian, 9% White, and other ethnicities in smaller percentages. The average median income in Santa Ana is approximately $54,500, as compared to the median income in Orange County of $75,400. Santa Ana has the highest Hispanic population in the County and is one of the lowest income cities in the County.

18. For decades, Santa Ana has borne the largest and most inequitable burden of addressing and relieving homelessness in Orange County, whether by providing necessary, related services on its own or by hosting the provision of such services by the County and third parties within its borders.

19. On March 31, 2018, a point-in-time count conducted by Santa Ana city staff and volunteers revealed there are at least 1,030 unsheltered individuals within city borders, 81% of whom are chronically homeless (for one year or more). Santa Ana's count established that 52% of the individuals counted came from outside Santa Ana and identified 32 Santa Ana public schools located within 1,000 feet of a homeless encampment.

20. U.S. Census estimates for 2018 indicate that Defendant San Clemente has a median household income of $105,812, Defendant San Juan Capistrano has a median household income of $87,353, and Defendant Dana Point has a median household income of $97,519.

**IMPACTS OF HOMELESSNESS ON SANTA ANA**

21. The impacts of homelessness on Santa Ana have been staggering. In 2017, Santa Ana spent approximately $15 million providing fire and police,

security and other necessary services to address homeless related issues in and around the Orange County Civic Center and Santa Ana.

22. The costs to Santa Ana keep rising. In Fiscal Year 2018-19, Santa Ana spent $16.6 million to address homeless issues at the expense of core services to Santa Ana residents. This money was spent on a wide variety of services, including police response, clean-up and code enforcement, homeless services, park safety, fire response, and management and legal services.

23. For Fiscal Year 2019-20, Santa Ana's estimated costs to address and mitigate homelessness are $25.4 million, all again for these same services and at the expense of core services to residents.

24. Santa Ana's physical resources have been overwhelmed. Until April 2018, over 200 homeless individuals lived in the Civic Center in tents and other makeshift shelters, specifically in an area known as the Plaza of the Flags, immediately adjacent to Santa Ana City Hall. This encampment necessitated the leasing of temporary bathroom facilities and created issues regarding the storage of personal property left unattended in and around the Civic Center. The circumstances gave rise to the near-constant law enforcement presence in the Civic Center.

25. Then and now, Santa Ana police provided homeless outreach services and faced quality of life issues, including suicide attempts, physical assaults, petty crimes, homicide investigations, among a variety of other issues. City personnel also undertook extraordinary health and safety measures, including the collection of abandoned, used, uncapped hypodermic needles, disposal of human waste left in public areas, increased maintenance services to confront excessive trash, and the implementation of weekly power washing to minimize Hepatitis A and other health concerns – all at Santa Ana's expense.

26. Despite continued admonitions by this Court, homeless individuals continue to be intentionally or unintentionally abandoned within Santa Ana by

various means. Some are transported for services to Santa Ana and left without a plan for return transportation to the city of origin. Other homeless individuals are brought to Santa Ana for shelter and essentially remain in Santa Ana if that housing solution ends. For others, it is believed they are simply transported to Santa Ana by neighboring agencies and ultimately abandoned. Regardless of the intent as to how or why homeless individuals are brought to Santa Ana, the impact is severe and burdens its residents.

27. The County, through the Orange County Sheriff's Department, routinely releases inmates who are homeless from its Central Jail Complex into Santa Ana, which is where the jail is located, without transporting them to their original place of residency. This practice has dramatically increased the homeless population in Santa Ana.

28. Despite the wealth and size of Orange County, and the considerable financial resources available to the County, the only low barrier emergency shelter operated by the County is found in Santa Ana. The County placed this shelter known as "The Courtyard" in Santa Ana and within proximity of sensitive land uses such as nearby residences, several schools, and two public libraries. The Courtyard provides shelter for more than 400 individuals on a nightly basis irrespective of weather. Living conditions in The Courtyard have come under severe criticism due to overcrowding, exposure to the elements, the lack of privacy for women, and compliance with the Americans with Disabilities Act.

29. On March 19, 2018, the Orange County Board of Supervisors voted to add up to 400 new, additional emergency shelter beds on county-owned properties in the cities of Irvine, Huntington Beach, and Laguna Niguel. This plan would have located 200 homeless people in Irvine, then 100 in Huntington Beach and 100 in Laguna Niguel, if needed.

30. Within one day of the County's approval, all three cities vigorously opposed this plan and threatened to sue the County, despite the fact that California law requires all cities to zone for homeless shelters.

31. By March 27, 2018, the Board of Supervisors formally rescinded its approval of the three-shelter plan.

32. Instead of this type of regional approach, the County currently has proposed to close The Courtyard and replace it with a shelter located in Santa Ana for up to 425 individuals.

33. In addition to The Courtyard, the County operates the Orange County Armory Emergency Shelter Program at the National Guard Armory located in Santa Ana ("Santa Ana Armory") and at another located in Fullerton. This program is operated by the County during nighttime hours only from October through April each year.

34. Santa Ana has little or no input into the manner of operation of the Armory Program by the County or its agents, or even whether the County elects to operate the Armory Program each year. The County operates the Armory Program through permission of the state of California.

35. The Santa Ana Armory houses 200 beds for adult clients. Clients are transported to and from the Armory by bus, using two pick-up sites in Santa Ana. Pick-ups begin at 6:00 p.m. each day. The morning bus leaves at 5:45 a.m., and all clients must exit the Armory by 6:30 a.m.

36. The Santa Ana Armory is located next to Santa Ana's Delhi Park and the Delhi Community Center. Delhi Park is a 10-acre open space with recreational fields, playgrounds, handball courts, and restrooms. As one of Santa Ana's biggest parks, it is utilized by a large number of residents. The Delhi Community Center is a full-service community center that serves as a gathering place for local residents and organizations.

37. The Armory's impacts on Delhi Park, and indeed Santa Ana as whole, are significant. Because the Armory is available to clients only during the nighttime hours, and even though Armory rules prohibit clients from walking off the property, clients regularly spend daytime hours in and around Delhi Park and in Santa Ana generally. This discourages residents and their families from using both the Park and Community Center for their intended purposes. Even more broadly, there is a substantial likelihood that clients of the Armory will remain somewhere in Santa Ana during daytime hours when the Armory is closed, thereby increasing the homeless population in Santa Ana and impacts thereof.

38. Private property is not immune from the impacts of homelessness either. Encampments, for example, regularly arise on property adjacent to railroad tracks and quickly present health and safety issues. Litter and debris, both small- and large-scale, from clothing to appliances, clutter the railroad right of way in multiple areas in Santa Ana, transforming them into eyesores and interfering with the use of neighboring land owned by the adjoining residents and businesses.

39. Acting pursuant to its municipal code, and in the absence of action by the railroads, Santa Ana has had to seek multiple inspection and abatement warrants against the Union Pacific Railroad in order to address these issues and connect homeless individuals with housing and services. To date, the cost for these efforts has exceeded $150,000.

**LAWSUIT BY CATHOLIC WORKER AND RESULTING SETTLEMENTS**

40. On January 29, 2018, the Orange County Catholic Worker and certain individual plaintiffs filed an action in this Court, entitled *Orange County Catholic Worker et al. v. Orange County et al.*, Case No. 8:18-cv-00155-DOC-KES, to halt the County's eviction of hundreds of homeless individuals then living in or near the Santa Ana Riverbed.

41. On or about February 4, 2018, the Court stayed the County's efforts and later lifted that stay only after requiring the County to provide 30-day motel

vouchers for individuals relocated from the Riverbed and concurrent assessments of those individuals to determine future shelter options and services.

42. Over 700 persons were relocated from the Riverbed, including single women and veterans. Later, approximately 200 individuals from the Orange County Civic Center were relocated.

43. In settlements reached with the plaintiffs in the above action, many Orange County cities, either alone or in partnership with others, committed to providing various numbers of emergency shelter beds for homeless individuals in and around their communities. These cities were Anaheim, Costa Mesa, Orange, Tustin, and all of the cities in the County's North Service Planning Area, which includes Brea, Buena Park, Cypress, Fullerton, La Habra, La Palma, Los Alamitos, Placentia, Stanton, Villa Park, and Yorba Linda.

44. The County also entered into a settlement with plaintiffs whereby the County agreed to certain protocols relating to the enforcement of anti-camping and anti-loitering ordinances in those cities where the Orange County Sheriff's Department provides contract law enforcement services, which include the cities named as defendants herein. The settlement imposed certain standards and conditions of operation for any County-funded and contracted homeless services but did not obligate the County to provide any certain number of shelter beds.

45. The County settlement expressly prohibited the Orange County Sheriff's Department from transporting homeless individuals across Service Planning Area boundaries for purposes of shelter placement.

46. With the exception of Laguna Beach, no city in the County's South Service Planning Area, including the cities named as defendants herein, have entered into any settlement with the OC Catholic Worker Plaintiffs regarding the provisions of shelter beds or anything else.

47. Santa Ana reached its own settlement with the OC Catholic Worker Plaintiffs whereby it agreed to provide a certain number of shelter beds and abide by various protocols for the enforcement of its anti-camping ordinances.

**SANTA ANA'S SIGNATURE EFFORTS TO ABATE HOMELESSNESS**

48. In January 2018, Santa Ana established a multi-disciplinary "Quality of Life Team" ("QOLT") to address the impacts of homelessness and other health and safety concerns in the City. The QOLT Team's work regularly includes encounters with homeless individuals, the goal of which is to connect such individuals with services, including temporary housing.

49. The QOLT Team has become a cornerstone of the City's efforts and has now been expanded to two teams, augmented by contractors, that work on a daily basis, including nighttime hours. It consists of members from several agencies at the City, including law enforcement members specially trained to address homelessness and related issues.

50. Despite the significant costs, Santa Ana remains committed to the QOLT Team's continued operations.

51. In yet another proactive measure, in November 2018, Santa Ana, with its own financial and other resources, and in only 28 days, constructed and opened a 200-bed low-barrier interim emergency homeless shelter called "The Link." The Link serves homeless women, men, and families, and is operated under contract with Mercy House Living Centers.

52. The Link has been a story of success, providing food, restroom and bathing facilities, social services, and temporary shelter to homeless individuals in Santa Ana. The Link was featured as the front cover story of the April 2019 edition of *Western City*, the monthly magazine of the League of California Cities. The Court has acknowledged this project and the City of Santa Ana as a model for the county, state and "maybe the nation."

53. The Link is scheduled to operate for approximately 2 years, to be replaced with a similar facility when it closes. For the first year of its operation, Santa Ana spent approximately $3.1 million and is scheduled to spend another $3 million in the second year.

54. While the QOLT Team and The Link are among the most visible measures Santa Ana has taken to combat homelessness, the City expends staff, management, and law enforcement resources on a daily basis in its quest to alleviate homelessness in Santa Ana.

55. For example, Santa Ana has developed a "Homeless Resource Kit" available to residents and businesses in the City. This includes a dedicated hotline and e-mail address for questions pertaining to homelessness, and a mobile phone application, known as "MySantaAna" for residents to alert the City of health and safety issues that frequently accompany homelessness. The City's response is to always try to connect homeless individuals with services, including housing at The Link. Only when shelter is offered and declined does the City enforce its anti-camping ordinances against an individual experiencing homelessness, in accordance with applicable law.

### DEFENDANTS RESPOND WITH MORE IMPACTS TO SANTA ANA

56. The lawsuit by OC Catholic Worker and resulting settlements, along with Santa Ana's longstanding role and above efforts to combat homelessness, dramatically raised hopes of global participation by the County and all of its cities in addressing homelessness, a solution long sought by Santa Ana. Despite this momentum, however, no city in the South Service Planning Area, including those named as defendants herein and with the exception of Laguna Beach, has committed to providing any shelter beds or offered a sustained, meaningful response to the homelessness crisis.

57. Instead, Defendant San Clemente, as joined by Defendants Dana Point and San Juan Capistrano, have decided to provide housing for their homeless

populations outside of their jurisdictions, by utilizing the Santa Ana Armory, further increasing the population of homeless individuals in Santa Ana and polarizing efforts for a more collaborative approach.

58. These cities do in fact host sizable populations of homeless individuals. According to the April 2019 Orange County Continuum of Care Point-in-Time Count, there were 145 homeless persons in San Clemente, 32 in Dana Point and 62 in San Juan Capistrano. Significantly, well over half of those in San Clemente, or 96, and all of those in Dana Point and San Juan Capistrano, were unsheltered.

59. On December 3, 2019, as reported by the *Orange County Register*, the San Clemente City Council directed that city's staff to move forward with plans to close the temporary homeless shelter that had been established by San Clemente in May 2019, when the shelter had originally been scheduled to close in June 2020. On December 10, 2019, the San Clemente City Council unanimously passed ordinances closing the shelter.

60. Also as reported by the *Orange County Register*, "San Clemente city officials sa[id] they will take advantage of the county's armories as a way to provide housing for homeless people who are now residing at a temporary shelter in a city lot along Avenida Pico." As described, San Clemente's plan is to use the Santa Ana and Fullerton Armories to satisfy its obligation to provide housing to their population of homeless individuals as a pre-condition to enforcement of its anti-camping ordinances.

61. On January 5, 2020, the *Orange County Register* reported that "In December, the city closed the lot, saying public armories open in Santa Ana and Fullerton could fulfill the city's bed requirement for the homeless as long as the city provided some transportation."

62. As part of its "Armory Plan," San Clemente would offer to provide daily transportation to the Armory shuttle sites and transportation for individuals to

return to the city during the day. There is no absolute or legal requirement, however, for such individuals to use this return transportation. Nor does there appear to be a plan to offer transportation at other times, when for example, a client must leave the Armory during nighttime hours for some reason. In these instances, the client would remain in Santa Ana.

63. Defendants Dana Point and San Juan Capistrano are reported to join San Clemente to share the cost for this transportation.

64. The decision by Defendants San Clemente, Dana Point, and San Juan Capistrano to use the Armory would effectively increase the impacts of homelessness on the City of Santa Ana by adding individuals to the already disproportionate share hosted in Santa Ana. Regrettably, this is the exact reverse of the more global solution long advocated by Santa Ana.

65. Potentially, such individuals would be transported to the Armories by the Orange County Sheriff's Department, which provides contract law enforcement services in these cities. This would violate the County settlement agreement with Plaintiffs in the OC Catholic Worker litigation, which settlement expressly prohibits transportation of homeless individuals across Service Planning Area boundaries for shelter purposes. Defendants Dana Point, San Clemente, and San Juan Capistrano are all located in the South Service Planning Area, whereas the Santa Ana Armory is located in the Central Service Planning Area and the Fullerton Armory is located in the North Service Planning Area.

66. The expressed intent of these cities marks a radical departure from the type of meaningful progress toward an equitable distribution of homeless services throughout Orange County. Despite their significantly elevated median household incomes, increased value of property taxes, and general wealth, these cities spend far less than Santa Ana on the provision of what should be their pro-rata share of homeless services. The goal must be a sustainable, long-term plan that is global in nature. There must be a basic willingness to seriously consider, or at least not

oppose, the provision of low barrier shelters and permanent supportive housing in all cities, including the defendants named herein.

## FIRST CAUSE OF ACTION

### Violation of Eighth Amendment (42 U.S.C. § 1983)

### (Against All Defendants)

67. Plaintiff City of Santa Ana incorporates by reference and realleges Paragraphs 1 through 66 as if fully set forth herein.

68. Defendants Dana Point, San Clemente, and San Juan Capistrano have either opposed, refused, rejected, or shuttered homeless shelters and services in their jurisdictions, under color of law, instead choosing to rely on the Santa Ana Armory to satisfy their obligations in these respects. Santa Ana has the densest concentration of homeless individuals in the County. Despite state requirements for each city to provide housing for homeless individuals, Defendants have made insubstantial progress or failed to do so entirely, instead unfairly shifting their obligations to Santa Ana.

69. Defendant County, under color of law, has established homeless services almost exclusively in Santa Ana, thereby further contributing to the dense concentration of homeless individuals therein.

70. As a direct and proximate result of Defendants' acts and omissions, Santa Ana has been compelled to spend millions of dollars from its general fund budget to address a myriad of health and safety concerns attributable to Santa Ana's homeless population. Santa Ana residents have faced homeless encampments, the possibility of a Hepatitis A outbreak, the threat of or actual physical and verbal assault, exposure to public defecation and public urination, carelessly discarded, uncapped, used hypodermic needles, aggressive panhandling, and excessive trash in the Civic Center and in parks and the public right-of-way.

71. Santa Ana would otherwise have spent these funds on the provision of core services to its residents but has been forced to divert such funds to provide homeless-related services, resulting in a deprivation of critical services that could negatively affect the quality of life of its residents.

72. The foregoing acts and omissions of Defendants have caused this deprivation of core services and quality of life by necessitating the expenditure of Santa Ana funds on services related to homelessness. Residents of Santa Ana are entitled to these services and by this deprivation, they have been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION

**Violation of Fourteenth Amendment: Equal Protection (42 U.S.C. §1983)**

**(Against All Defendants)**

73. Plaintiff City of Santa Ana incorporates by reference and realleges Paragraphs 1 through 72 as if fully set forth herein.

74. The population of Santa Ana is approximately 341,000, 78% of which is Hispanic. No other city in Orange County has a higher Hispanic population.

75. Santa Ana's median household income is also near the lowest of all cities in Orange County.

76. These ethnicity and income demographics are well-known to Defendants.

77. Against these demographics, Defendants have either established, encouraged, or been content with the provision of homeless shelters and services almost exclusively within the borders of Santa Ana instead of their own jurisdictions.

78. This practice has continued unabated for years, as only underscored by the plan by Defendant County to site a replacement shelter for The Courtyard

within Santa Ana and the plan by Defendants Dana Point, San Clemente, and San Juan Capistrano Cities, both under color of law, to transport their homeless residents to the Santa Ana Armory, instead of utilizing, building, or operating a homeless shelter within or among their own jurisdictions, or even in the South Service Planning Area. Both plans recklessly disregard that Santa Ana already hosts its own 200-bed shelter and by far the highest measure of social and other services targeted at homeless individuals.

79. Based on Defendants' acts and omissions, Santa Ana and its residents have suffered a denial of the equal protection of the laws, as guaranteed by the Fourteenth Amendment of the United States Constitution.

### THIRD CAUSE OF ACTION
**Violation of Fourteenth Amendment: Due Process (42 U.S.C. §1983)**
**(Against All Defendants)**

80. Plaintiff City of Santa Ana incorporates by reference and realleges Paragraphs 1 through 79 as if fully set forth herein.

81. Santa Ana has a significant liberty interest in administering an efficient and effective government for the benefit of its citizens.

82. This interest has been severely compromised by Santa Ana's need to devote substantial monetary and human resources to managing and relieving the acute homelessness crisis within its borders. The diversion of such resources has been to the detriment of Santa Ana residents.

83. This crisis has been precipitated and exacerbated by the foregoing actions and omissions of Defendants, under color of law, thereby depriving Santa Ana of its liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution and to the detriment of its residents.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff City of Santa Ana prays for the following:

1. As against Defendant County, monetary damages according to proof as reimbursement for the costs spent on homeless resources and necessary related services;

2. As against Defendant County, monetary damages according to proof for funding the continued provision of homeless resources and necessary related services;

3. As against all Defendants, declaratory judgment that Defendants and each of them have denied Santa Ana's rights under the Eighth and Fourteenth Amendments as alleged herein;

4. As against all Defendants, injunctive relief prohibiting the transportation of homeless individuals to the Santa Ana Armory for purposes of shelter;

5. As against all Defendants, reasonable attorney's fees;

6. As against all Defendants, costs of suit; and

7. Such further relief as the Court may deem just and proper.

CITY OF SANTA ANA

Dated: January 13, 2020     By: _John M. Funk_
John M. Funk
Assistant City Attorney
Attorney for Plaintiff City of Santa Ana