1  JOHN M. FUNK, STATE BAR NO. 204605
   ASSISTANT CITY ATTORNEY
2  CITY OF SANTA ANA
   20 CIVIC CENTER PLAZA M-29
3  P.O. BOX 1988
   SANTA ANA, CALIFORNIA  92702
4  TELEPHONE:  (714) 647-5201
   FACSIMILE:    (714) 647-6515
5  EMAIL:  jfunk@santa-ana.org

6
   Attorneys for Plaintiff
7  CITY OF SANTA ANA

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                       SOUTHERN DIVISION

12

13  City of Santa Ana,                    ) Case No.:
                                          )
14            Plaintiff,                   )
                                          ) **PLAINTIFF'S EX PARTE**
15       v.                               ) **APPLICATION FOR**
                                          ) **TEMPORARY RESTRAINING**
16  County of Orange; City of Dana Point; ) **ORDER AND ORDER TO SHOW**
                                          ) **CAUSE WHY A PRELIMINARY**
17  City of San Clemente; City of San Juan) **INJUNCTION SHOULD NOT**
    Capistrano; and DOES 1-10.            ) **ISSUE; MEMORANDUM OF**
18                                        ) **POINTS AND AUTHORITIES IN**
                                          ) **SUPPORT THEREOF;**
19            Defendants.                 ) **DECLARATION OF KENNETH**
                                          ) **GOMINSKY, JR.**
20                                        )
                                          ) **[PROPOSED ORDER LODGED**
21                                        ) **CONCURRENTLY]**
                                          )
22                                        )
                                          )
23

24        Plaintiff City of Santa Ana, a charter city and municipal corporation

25  organized and existing under the Constitution and laws of the State of California,

26  hereby applies *ex parte* to this Court pursuant to Federal Rule of Civil Procedure 65

27

28

                                        1

1   and Local Civil Rule 65-1 for a Temporary Restraining Order enjoining the County

2   of Orange and the Cities of Dana Point, San Clemente, and San Juan Capistrano

3   (collectively, the "Defendant Cities"), and all of their respective agents, servants,

4   and employees, and those in active concert or participation with them, from

5   transporting, or otherwise engaging, arranging, or facilitating transportation for,

6   individuals experiencing homelessness in their municipal jurisdictions to the Santa

7   Ana Armory for purposes of shelter, pending a hearing on the Order to Show Cause

8   Why a Preliminary Injunction Should Not Issue.

9       In accordance with Local Civil Rule 7-19, Plaintiff provides the following

10  contact information for Defendants' counsel:

11

12  Leon J. Page                              Patrick Munoz

13  County Counsel                            City Attorney for Dana Point
    County of Orange                          Rutan & Tucker, LLP

14  333 W. Santa Ana Blvd, Suite 407          611 Anton Blvd, Suite 1400

15  Santa Ana, CA  92701                      Costa Mesa, CA  92626
    leon.page@coco.ocgov.com                  pmunoz@rutan.com

16

17  Jeffrey Ballinger                         Scott Smith

18  City Attorney for San Juan Capistrano     City Attorney for San Clemente
    Best Best & Krieger LLP                   Best Best & Krieger LLP

19  655 West Broadway, 15th Floor             18101 Von Karman Ave, Suite 1000

20  San Diego, CA  92101                      Irvine, CA  92612
    jeff.ballinger@bbklaw.com                 scott.smith@bbklaw.com

21

22      Counsel for Santa Ana has advised each of the above counsel of the date and

23  substance of this Ex Parte Application by telephone on January 13, 2020.  Counsel

24  for each of the Defendants has informed Santa Ana that they intend to oppose this

25  Application.

26      Plaintiff Santa Ana seeks relief on the grounds that it will suffer imminent

27  and irreparable harm based on the recent, public decisions by the Defendant Cities

28  to  transport  individuals  experiencing  homelessness  from  their  municipal

jurisdictions to the Santa Ana Armory for purposes of shelter instead of providing shelter and other related services within or among their own jurisdictions.  Plaintiff satisfies all the applicable criteria for injunctive relief, as demonstrated below.

This Ex Parte Application is based on the Complaint for Civil Rights on file with the Court, the accompanying Memorandum and exhibits attached thereto, all other pleadings and papers filed in this action, the argument of counsel, and further evidence as the Court may consider at or before a hearing regarding this Ex Parte Application or a hearing regarding the Order to Show Cause Why a Preliminary Injunction Should Not Issue.

Dated: January 13, 2020                                          Respectfully submitted,
                                                                 CITY OF SANTA ANA



                                                       By:   _John M. Funk_
                                                             John M. Funk
                                                             Assistant City Attorney
                                                             Attorney for Plaintiff City of Santa Ana

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................ 7

FACTUAL BACKGROUND ............................................................. 9

ARGUMENT ..................................................................................... 11

   A.   Santa Ana is Likely to Succeed on the Merits.............................. 11

   B.   Santa Ana is Likely to Suffer Imminent Irreparable Harm in the Absence of Preliminary Relief ............................................................................. 14

   C.   The Balance of Equities Tips Sharply in Santa Ana's Favor ....................... 17

   D.   Injunctive Relief Advances the Public Interest ............................................ 18

   E.   The Court Should Excuse the Requirement of Security .............................. 19

   F.   Conclusion .................................................................................... 20

DECLARATION OF KENNETH GOMINSKY, JR............................................. 22

# MEMORANDUM OF POINTS AND AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 ................................ 11

*Associated General Contractors v. Coalition For Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)) ................................. 16

*Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) ............................ 19

*Bernhardt v. Los Angeles County*, 339 F.3d 920, 931-32 (9th Cir. 2003)) .............. 18

*CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 852 (9th Cir. 2019). 17

*Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) ......................................... 19

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014) ................. 13

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)) .................................................. 16

*HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 ....................................... 11

*Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ................................. 19

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) ................................. 18

*Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) ................................. 13

*Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) ............................... 17

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ................................... 16

*Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ............... 16

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017) ................................................................................. 19

*Orange County Catholic Worker et al. v. Orange County et al.* ............................. 8

*Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) ...................... 16

*Randolph Cnty. v. Ala. Power Co.*, 798 F.2d 425, 425-26 (11th Cir. 1986) ............ 12

*Rockford Bd. of Educ., Sch. Dist. No. 205 v. Ill. State Bd. of Educ.*, 150 F.3d 686, 688 (7th Cir. 1998) ................................. 12

*Rural Water Dist. No. 1, Ellsworth Cnty., Kan. v. City of Wilson*, 243 F.3d 1263, 1274 (10th Cir. 2001 ................................. 12

*Safety Harbor v. Birchfield*, 529 F.2d 1251, 1253-54 (5th Cir. 1976) ..................... 12

*Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)) .. 19

*South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500, 503
  (6th Cir. 1986) ..................................................................................................... 12

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)) ............................ 17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 .............. 11

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 ........................ 11

# **INTRODUCTION**

More of the same.  That is what describes the recent expectations by the County of Orange and Defendant Cities that Santa Ana should take on even greater responsibility for additional individuals experiencing homelessness, when Santa Ana has for decades unilaterally served as the leader in the County to relieve the homelessness crisis.

The impacts of homelessness on Santa Ana have been staggering.  Homeless services and shelters in Orange County are sited almost exclusively in Santa Ana. Despite the County's considerable financial resources, the only low-barrier homeless shelter operated by the County, "The Courtyard," is located in Santa Ana. The Courtyard provides nightly shelter for over 400 individuals and sits in the heart of Santa Ana, in close proximity to schools, parks, and businesses.  While a replacement shelter has been proposed by the County, that too will be located in Santa Ana.  Social and mental health services intended for homeless individuals abound in Santa Ana but hardly anywhere else.  Homeless inmates are regularly released from the County's Central Jail Complex into Santa Ana.  The County operates the Orange County Armory Emergency Shelter Program at the National Guard Armory in Santa Ana ("Santa Ana Armory"), with 200 beds for adult clients during nighttime hours.  Santa Ana's parks and public rights-of-way regularly serve as locations for homeless encampments.

Despite these acute impacts, Santa Ana has for years, and at its own expense, sought to alleviate the homelessness crisis within its borders in a responsible and humanitarian manner.  In late 2018, in only 28 days, Santa Ana constructed and opened a 200-bed low-barrier interim homeless shelter called "The Link."  On a daily basis, Santa Ana operates 2 multi-disciplinary "Quality of Life Teams" to respond to homelessness and other health and safety concerns throughout the City.  Specially trained police officers are equipped to encounter homeless individuals and connect them with housing and other services.

1  Enforcement of the City's anti-camping ordinances takes place only when shelter
2  is offered and declined.

3       All of these efforts have come at enormous expense to Santa Ana and its
4  residents.   In Fiscal Year 2018-19, Santa Ana spent $16.6 million to address
5  homeless issues.   In Fiscal Year 2019-20, Santa Ana's estimated costs to address
6  and mitigate homelessness are $25.4 million, all at the expense of core services to
7  residents.  Santa Ana's resources are stretched to the limit.

8       After years of a go-at-it-alone approach, Santa Ana genuinely felt hope for a
9  more global, collaborative approach following settlements reached between several
10  cities and the plaintiffs in the 2018 action entitled *Orange County Catholic Worker*
11  *et al. v. Orange County et al.*, Case No. 8:18-cv-00155-DOC-KES.   By these
12  settlements, many Orange County cities, either by themselves or in partnership with
13  others, committed to providing various numbers of emergency shelter beds for
14  homeless individuals in and around their communities.

15       But none of them, except for Laguna Beach, are in the County's South
16  Service Planning Area (which comprises South Orange County in general), despite
17  that there are 763 homeless individuals in that region, according to the April 2019
18  Orange County Continuum of Care Point-in-Time Count.  Of these, over half, or
19  538, are unsheltered.

20       While Santa Ana remained optimistic that communities in the South Service
21  Planning Area were amenable to a more equitable, regional approach, those hopes
22  were dealt a major setback by the recent public announcement by Defendant Cities
23  that they intend to use the Armory Program – located in Santa Ana next to one of
24  its largest parks – as a means to provide housing for their homeless populations.
25  Already overburdened, Santa Ana is simply ill-equipped to absorb the impacts of an
26  even larger homeless population within its boundaries.  This is why it now seeks
27  relief from the Court even at the mere possibility of Defendant Cities' proposal.

28

# FACTUAL BACKGROUND

Rather than provide any shelter beds or services to their homeless populations, Defendant Cities have publicly decided to provide housing for their homeless populations outside of their jurisdictions, by utilizing the Santa Ana Armory, further increasing the population of homeless individuals in Santa Ana. Defendant Cities themselves host sizable populations of homeless individuals. According to the April 2019 Orange County Continuum of Care Point-in-Time Count, there were 145 homeless persons in San Clemente, 32 in Dana Point, and 62 in San Juan Capistrano. Well over half of those in San Clemente, or 96, and all of those in Dana Point and San Juan Capistrano, were unsheltered.

On December 3, 2019, as reported by the *Orange County Register*, the San Clemente City Council directed that city's staff to move forward with plans to close the temporary homeless shelter that had been established by San Clemente in May 2019, when the shelter had originally been scheduled to close in June 2020. On December 10, 2019, the San Clemente City Council unanimously passed ordinances closing the shelter.

Also as reported by the Orange County Register, "San Clemente city officials sa[id] they will take advantage of the county's armories as a way to provide housing for homeless people who are now residing at a temporary shelter in a city lot along Avenida Pico." On January 5, 2020, the *Orange County Register* reported that "In December, the city closed the lot, saying public armories open in Santa Ana and Fullerton could fulfill the city's bed requirement for the homeless as long as the city provided some transportation."

As described, San Clemente's plan is to use the Santa Ana (and Fullerton) Armories to satisfy its obligation to provide housing to their population of homeless individuals as a pre-condition to enforcement of its anti-camping ordinances. Defendants Dana Point and San Juan Capistrano reportedly plan to join San Clemente to share the cost of transportation to the Armories.

The decisions by Defendant Cities to utilize the Santa Ana Armory would effectively increase the impacts of homelessness on the City of Santa Ana by adding individuals to the already disproportionate share hosted in Santa Ana. While Defendant Cities purport to be offering return transportation to their clients during the daytime hours (when the Armory is closed), there is no legal or absolute requirement for such individuals to use this return transportation. Nor does there appear to be a plan to offer transportation at other times, when for example, a client must leave the Armory during nighttime hours for some reason. In these instances, the client would remain in Santa Ana.

Potentially, such individuals would be transported to the Armories by the Orange County Sheriff's Department, which provides contract law enforcement services in Defendant Cities. This additionally violates the settlement agreement between the County of Orange and the Plaintiffs in the OC Catholic Worker litigation, which expressly prohibits transportation of homeless individuals by the County across Service Planning Area boundaries for shelter purposes. Defendant Cities are all located in the South Service Planning Area, whereas the Santa Ana Armory is located in the Central Service Planning Area and the Fullerton Armory is located in the North Service Planning Area.

To avoid imminent, irreparable harm, and to re-focus efforts towards the more equitable distribution of homeless services throughout Orange County, Santa Ana seeks to enjoin the County and the Defendant Cities from transporting, or otherwise engaging, arranging, or facilitating transportation for, individuals experiencing homelessness in their municipal jurisdictions to the Santa Ana Armory for purposes of shelter during the pendency of this action. In seeking this relief, Santa Ana by no means intends to deprive any homeless individual of shelter at any time (including the nighttime hours) but is simply asking that the respective cities develop their own solutions, within their own borders, to homelessness, as Santa Ana has done for years at its own expense.

**ARGUMENT**

The same legal standard applies to an application for a temporary restraining order and an application for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (2019) (quoting *Winter*, 555 U.S. at 20). While all four elements must be satisfied, courts in the Ninth Circuit use a "sliding scale" approach to these factors, according to which "'a stronger showing of one element may offset a weaker showing of another.'" *HiQ Labs*, 938 F.3d at 992 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Accordingly, when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only "'serious questions going to the merits.'" *Id.* (quoting *Cottrell*, 632 F.3d at 1135).

**A.     Santa Ana is Likely to Succeed on the Merits**

In its complaint, Santa Ana raises constitutional claims pursuant to 42 U.S.C. section 1983 ("Section 1983") on which it is likely to prevail. As a threshold matter, municipalities may seek relief under Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any

1    rights, privileges, or immunities secured by the Constitution and laws,

2    shall be liable to the party injured in an action at law, suit in equity, or

3    other proper proceeding for redress, except that in any action brought

4    against a judicial officer for an act or omission taken in such officer's

5    judicial capacity, injunctive relief shall not be granted unless a

6    declaratory decree was violated or declaratory relief was unavailable.

7    For the purposes of this section, any Act of Congress applicable

8    exclusively to the District of Columbia shall be considered to be a

9    statute of the District of Columbia.

10

11   By the plain language of the statute, the parties that are protected and can

12   bring suit are "any citizen of the United States or other person within the jurisdiction

13   thereof." In 1976, the Fifth Circuit held that a municipality was not a person

14   entitled to maintain suit under section 1983, *Safety Harbor v. Birchfield*, 529 F.2d

15   1251, 1253-54 (5th Cir. 1976), but that holding was criticized 10 years later by the

16   Sixth Circuit. *South Macomb Disposal Authority v. Township of Washington*, 790

17   F.2d 500, 503 (6th Cir. 1986); *see also Rural Water Dist. No. 1, Ellsworth Cnty.,*

18   *Kan. v. City of Wilson*, 243 F.3d 1263, 1274 (10th Cir. 2001) (agreeing with the

19   Sixth Circuit that municipality was a "person" capable of bringing claims under §

20   1983).

21   While other circuits have reached the opposite conclusion, *see, e.g., Rockford*

22   *Bd. of Educ., Sch. Dist. No. 205 v. Ill. State Bd. of Educ.*, 150 F.3d 686, 688 (7th Cir.

23   1998) (noting that "a city or other municipality cannot bring a suit under 42 U.S.C. §

24   1983"); *Randolph Cnty. v. Ala. Power Co.*, 798 F.2d 425, 425-26 (11th Cir. 1986)

25   (stating that "we have subsequent to Monell continued to hold that a municipality

26   has no cause of action under section 1983"), the Ninth Circuit has not yet

27

28

1    definitively addressed the issue.[1]   Accordingly, and in view of the more modern
2    authority, Santa Ana should be able to seek relief under Section 1983, or at the very
3    least is not prohibited from doing so under existing precedent.

4         The alleged constitutional deprivations suffered by Santa Ana through the
5    actions or inactions of the Defendants are themselves colorable.   The equal
6    protection claim, for example, is based on the membership of the overwhelming
7    majority of Santa Ana residents in a protected class (race or ethnicity).   The due
8    process claim invokes Santa Ana's liberty interest in administering an efficient and
9    effective government for the benefit of its citizens.  The significance of this interest
10   – for any municipal government – can hardly be doubted.

11        Through the factual allegations supporting these claims as set forth in Santa
12   Ana's Complaint, including Defendants' well-documented actions to burden Santa
13   Ana with the bulk of homeless services for all of Orange County, Santa Ana has
14   amply demonstrated the "serious questions going to the merits" that are needed to
15   support injunctive relief.  *Cottrell*, 632 F.3d at 1135.   Under well-settled Ninth
16   Circuit law, this is the standard by which the likelihood of success is measured, and
17   Santa Ana satisfies it.   Reinforcing this conclusion are still other less stringent
18   formulations that have been applied in the Ninth Circuit.  *See, e.g., Drakes Bay*
19   *Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014) (likelihood of success per
20   se not an absolute requirement for injunctive relief) (citing *Cottrell*, 632 F.3d at
21   1131-32); *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (likelihood of

---

23   [1]      The Ninth Circuit, however, has observed that "suits under 42 U.S.C. § 1983
24   by corporate plaintiffs are permissible."  *Azer v. Connell*, 306 F.3d 930, 935 (9th
     Cir. 2002) (citing *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 283
25   (9th Cir. 1974)).   Only a district court in the Ninth Circuit has summarily followed
26   the since-rejected holding of *Safety Harbor*. *City of Los Angeles v. County of Kern*,
     462 F. Supp. 2d 1105, 1119 (C.D. Cal. 2006).   But even more recently than both
27   these cases, corporations have been found to possess constitutional rights. *See, e.g.,*
28   *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 391-93 (2010)
     (concluding that First Amendment rights apply to corporations)

13

1   success on the merits for purposes of stay of removal in deportation appeal does not

2   mean "more likely than not").

3

4   **B.     Santa Ana is Likely to Suffer Imminent Irreparable Harm in the Absence**

5   **of Preliminary Relief**

6

7       In the absence of injunctive relief, Santa Ana is likely to suffer imminent,

8   irreparable injury because Defendants' actions will exacerbate the impacts of

9   homelessness not only in Delhi Park and the Delhi Community Center, but, more

10  important, in all of Santa Ana.  Delhi Park is a 10-acre open space with recreational

11  fields, playgrounds, handball courts, and restrooms.  As one of Santa Ana's biggest

12  parks, it is utilized by a very large number of residents.  The Delhi Community

13  Center is a full-service community center that serves as a gathering place for local

14  residents and organizations.

15      The Armory's impacts on Delhi Park are already significant.  Because the

16  Armory is available to clients only during the nighttime hours, and even though

17  Armory rules prohibit clients from walking off the property, clients regularly spend

18  daytime hours in and around Delhi Park.  This discourages residents and their

19  families from using both the Park and Community Center for their intended

20  purposes.  This same impact has been felt by Madison Park as well, a 6-acre facility

21  that is less than 1 mile from Delhi Park.

22      But the Armory undeniably impacts Santa Ana as a whole, which stands to

23  suffer imminent, irreparable harm by Defendants Cities' decision to use the Armory

24  to house their homeless populations.  As part of their "Armory Plan," they would

25  offer to provide daily transportation to the Armory shuttle sites (from which clients

26  are driven to the Armory) and transportation for individuals to return to their

27  jurisdictions during the day.  There is no absolute or legal requirement, however,

28  for such individuals to use this return transportation.  Nor does there appear to be a

    plan to offer transportation at other times, when for example, a client must leave the

1    Armory during nighttime hours for some reason.  In these instances, the client

2    would remain in Santa Ana.

3        For every client that remains in Santa Ana – even if just one – the impacts to

4    Santa Ana multiply.   While Santa Ana unselfishly provides services to each

5    member of its homeless population, every additional individual requires the

6    provision of homeless-related services to a larger number of people without any

7    corresponding increase in the City's resources.   These services include without

8    limitation law enforcement and fire department response and triage, provision of

9    bed space at Santa Ana's low barrier shelter ("The Link"), and encounters with the

10   City's multi-disciplinary Quality of Life Teams that work daily in Santa Ana to

11   respond to encampments regularly arising in city parks and public rights-of-way.

12   *See* Declaration of Kenneth Gominsky, Jr.

13       Again, the cost of these services to Santa Ana are jaw-dropping.  In Fiscal

14   Year 2018-19, Santa Ana spent $16.6 million on them.  In Fiscal Year 2019-20,

15   Santa Ana's estimates it will spend $25.4 million.  As measured against the April

16   2019 Orange County Continuum of Care Point-in-Time Count of 1,769 homeless

17   individuals in Santa Ana, this translates into $14,358 per individual.   Of these

18   individuals, 830 are unsheltered.   If measured against this number, the cost

19   increases to $30,602 per individual.   Accordingly, Santa Ana's costs can be

20   expected to grow by at least these amounts for every additional homeless person in

21   its borders.[2]  *See* Declaration of Kenneth Gominsky, Jr.

22

23

---

24   [2]     Ordinarily, while monetary harm alone does not constitute irreparable harm,
     *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d
25   1197,1202 (9th Cir. 1980), irreparable harm was recently found when states and
26   counties stood to lose millions of dollars in federal reimbursements and faced
     increased operational costs by a new rule promulgated by the Department of
27   Homeland Security redefining the term "public charge" for purposes of the
28   Immigration and Nationality Act.   *City & County of San Francisco v. U.S.
     Citizenship & Immigration Services*, 2019 U.S. App. LEXIS 36137 at p. 29 (9th Cir.

1    The harm to Santa Ana caused by Defendants proposed action is simply too
2 severe and irreparable for even the threat of that action to endure.[3] Santa Ana has
3 established the causal connection required between this harm and the conduct
4 sought to be enjoined. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir.
5 2011).   If Defendants are not so enjoined, Santa Ana will experience an
6 unacceptable increase in the population of homeless persons within its borders –
7 and all the corresponding effects on its property, residents, and services.

8    In additional to the particularized harm described above, the constitutional
9 nature of Santa Ana's claims also supports a showing of irreparable injury.
10 *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("'We have
11 stated that an alleged constitutional infringement will often alone constitute
12 irreparable harm.'") (quoting *Associated General Contractors v. Coalition For*
13 *Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *see also Melendres v.*
14 *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (It is well established that the
15 deprivation of constitutional rights "'unquestionably constitutes irreparable
16 injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).   In its Complaint,
17 Santa Ana raises federal constitutional deprivations.   These infringements, when
18 viewed with their actual impacts on Santa Ana, make it likely that Santa Ana will
19 suffer irreparable harm if injunctive relief is not granted.

20

21   2019).   Santa Ana undoubtedly faces increased operational costs by Defendants'
22   conduct.
     [3]    Even if Defendants were to reverse their decision to use the Armory, this case
23   would not be rendered moot.   To establish mootness, a defendant must show that
24   subsequent events have made it absolutely clear that the allegedly wrongful
     behavior cannot reasonably be expected to occur.   *FTC v. Affordable Media, LLC*,
25   179 F.3d 1228, 1238 (9th Cir. 1999) (internal quotes omitted).   The very public and
26   unequivocal nature of the Defendants' decision to use the Armory Program for their
     homeless populations, combined with the continued operation of the Armory
27   Program by the County and the absence of shelter beds in their own jurisdictions,
28   offer no assurances that Defendants' conduct will not materialize.   Only injunctive
     relief can adequately minimize the risk of injury to Santa Ana.

## C.    The Balance of Equities Tips Sharply in Santa Ana's Favor

For injunctive relief to issue, the court must "'balance the interests of all parties and weigh the damage to each'" in determining the balance of the equities. *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 852 (9th Cir. 2019) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).  Here, there is no identifiable harm to be faced by the Defendants if injunctive relief is granted.  While they may assert that the Armory should be available to them as a matter of right, additional factors substantially weaken this argument.  Defendants have a pre-existing legal obligation to offer shelter themselves in their jurisdictions to homeless individuals as a condition for their law enforcement personnel to enforce local anti-camping and anti-loitering ordinances.  *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) (concluding that "as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter), *cert. denied*, 2019 U.S. LEXIS 7571 at p. 1.  Even more fundamentally, transporting such individuals across Service Planning Area boundaries violates the settlement between the County and the OC Catholic Worker Plaintiffs.  This settlement prohibits the Orange County Sheriff's Department, which provides contract law enforcement services in Defendant Cities, from transporting homeless individuals across boundary lines for purposes of shelter placement.  Defendants Dana Point, San Clemente, and San Juan Capistrano are all located in the South Service Planning Area, whereas the Santa Ana Armory is located in the Central Service Planning Area and the Fullerton Armory is located in the North Service Planning Area.

In contrast, Santa Ana faces grave hardship if Defendants' conduct is not enjoined.  To reiterate, and as discussed above, Santa Ana will experience an increase in the population of homeless persons within its borders – and all the corresponding effects on its property, residents, and services.  Already

1    overwhelmed, Santa Ana will incur immediate, imminent harm, including increased

2    calls for law enforcement and fire department response, heightened demand for bed

3    space and services at The Link homeless shelter, and added health and safety

4    burdens on park and public rights-of-way.

5         The absence of any harm to Defendants caused by the proposed injunctive

6    relief, as opposed to the substantial injury faced by Santa Ana without injunctive

7    relief, means that the balance of hardships tips sharply in favor of Santa Ana.

8    Defendants face no risk of harm, whereas Santa Ana faces nothing but risk.

10   **D.    Injunctive Relief Advances the Public Interest**

12        Courts pay particular regard for the public consequences in employing the

13   remedy of injunctive relief. *Winter*, 555 U.S. at 24. The public interest inquiry

14   addresses the impact upon nonparties rather than parties. *League of Wilderness

15   Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766

16   (9th Cir. 2014). It takes into consideration "'the public consequences in employing

17   the extraordinary remedy of injunction.'" *HiQ Labs*, 938 F.3d at 1004 (quoting

     *Bernhardt v. Los Angeles County*, 339 F.3d 920, 931-32 (9th Cir. 2003)).

18        The public consequences of witholding injunctive relief in this matter are

19   grave. Delhi Park, immediately adjacent to the Santa Ana Armory, continues to be

20   heavily impacted from the operation of the Armory program. Because the Armory

21   is available to clients only during the nighttime hours, and even though Armory

22   rules prohibit clients from walking off the property, clients regularly spend daytime

23   hours in and around Delhi Park. This discourages residents and their families from

24   using both Delhi Park and Community Center for their intended purposes. In a city

25   such as Santa Ana, where open space for recreation is at an absolute premium,

26   these health and safety burdens have negatively affected the quality of life for its

27   residents.

28

Even more significantly, the increase in Santa Ana's homeless population caused by Defendants' proposed action will cause additional funds and services to be diverted from residents.  Already, Santa Ana would otherwise have spent these funds on the provision of core services to its residents but has been forced to divert such funds to provide homeless-related services, resulting in a deprivation of critical services that could also negatively affect the quality of life of its residents.  With an increased population of homeless individuals to serve, even less funds will be available for basic city services.

Finally, "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Melendres*, 695 F.3d at 1002 (citing *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)).  Constitutional rights form the basis of the underlying lawsuit and therefore warrant injunctive relief for the pendency of this action.

**E.     The Court Should Excuse the Requirement of Security**

Federal Rule of Civil Procedure 65(c) ordinarily requires the posting of security by the moving party "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Courts in the Ninth Circuit, however, have treated the bond requirement as entirely discretionary, allowing for waiver of the bond under particular circumstances.  *See, e.g., Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017).

The court may dispense entirely with the bond requirement when there is no realistic likelihood of harm to the defendant from enjoining its conduct.  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  Here, as explained above, there is in fact no

1    demonstrable harm to Defendants from granting injunctive relief.   Accordingly,

2    Santa Ana should be excused from the requirement of filing any security.

3

4    **F.     Conclusion**

5           Defendants' decision to transport their homeless populations to the Santa

6    Ana Armory for shelter purposes is an affront to the ongoing efforts by so many

7    other Orange County Cities towards a more equitable solution to homelessness, but

8    particularly to Santa Ana.   For years, Santa Ana has expended vast efforts and

9    resources to relieve homelessness in its borders, only to have the County and

10   Defendant Cities effectively impose added burdens.   No new shelter beds have been

11   established in South Orange County, including the Defendant Cities, and those

12   Cities have instead chosen to use facilities in Santa Ana to house their own

13   homeless populations.   One has closed its temporary shelter outright in favor of

14   their Armory Plan.   This cannot stand.   Without question, and by any measure,

15   Santa Ana's resources have been overwhelmed by the homelessness crisis.   Santa

16   Ana has sought to combat homelessness in every humanitarian way but cannot be

17   expected to do even more, which is exactly what the Defendants are expecting by

18   their proposed conduct.

19          Accordingly, for all the reasons set forth above, Santa Ana respectfully

20   requests that this Court issue a temporary restraining order enjoining the County of

21   Orange and the Cities of Dana Point, San Clemente, and San Juan Capistrano, and

22   all of their respective agents, servants, and employees, and those in active concert

23   or participation with them, from transporting, or otherwise engaging, arranging, or

24   facilitating transportation for, individuals experiencing homelessness in their

25   municipal jurisdictions to the Santa Ana Armory for purposes of shelter.   Santa Ana

26   further requests that the Court set a hearing on the Order to Show Cause regarding

27   why Defendants should not be similarly enjoined during the pendency of this

28   action.

Respectfully submitted,
CITY OF SANTA ANA

Dated: January 13, 2020                By:    _____
                                              John M. Funk
                                              Assistant City Attorney
                                              Attorney for Plaintiff City of Santa Ana

## DECLARATION OF KENNETH GOMINSKY, JR.

I, Kenneth Gominsky, Jr., declare as follows:

1.     I have personal knowledge of the facts set forth herein, and, if called as a witness, could competently testify thereto.

2.     I am employed with the Santa Ana Police Department as a peace officer. I have been so employed for more than 25 years. I currently hold the rank of Deputy Chief of the Santa Ana Police Department, and oversee the Department's Investigations Bureau, which includes detectives, civilian investigators, and forensics personnel. The Investigations Bureau investigates crimes against persons and property crimes within the City of Santa Ana.

3.     As a peace officer for the City of Santa Ana, I have served at all levels of the City's Police Department, including patrol officer, supervisor of patrol, Field Training Officer, Court Liaison, Technology Support Bureau, Field Operations, Crime Analysis, Computer Services, Use of Force Committee, Watch Commander, Commander of Technology and Support, Commander of Homeland Security Division, Field Operations District Commander, and Field Operations Deputy Chief. I have a Bachelor's Degree in Criminal Justice from California State University, Fullerton, and am a State Certified Crime and Intelligence Analyst from the University of California. I am also a graduate of the Law Enforcement Executive Development Course of the Federal Bureau of Investigation.

4.     For the past 5 years, I have been among the primary leaders of the City's efforts to combat homelessness within its jurisdictions, both from a law enforcement and humanitarian perspective. I regularly coordinate with City staff in the implementation of strategies and best practices to alleviate homelessness in Santa Ana. I routinely interact with the City's homeless population and have extensive training and experience in addressing the specific and unique issues raised by these encounters.

5.     Defendants' proposed decision to use the Santa Ana Armory to house their homeless residents will cause Santa Ana irreparable harm.  Their actions will exacerbate the impacts of homelessness not only in neighboring Delhi Park and the Delhi Community Center, but, more important, in all of Santa Ana.  Delhi Park is a 10-acre open space with recreational fields, playgrounds, handball courts, and restrooms.   As one of Santa Ana's biggest parks, it is utilized by a very large number of residents.   The Delhi Community Center is a full-service community center that serves as a gathering place for local residents and organizations.

6.     Because the Armory is available to clients only during the nighttime hours, and even though Armory rules prohibit clients from walking off the property, clients regularly spend daytime hours in and around Delhi Park.   This discourages residents and their families from using both the Park and Community Center for their intended purposes.   This same impact has been felt by Madison Park as well, a 6-acre facility that is less than 1 mile from Delhi Park.   In a city such as Santa Ana, where open space for recreation is at an absolute premium, these health and safety burdens have negatively affected the quality of life for its residents.

7.     The Armory undeniably impacts Santa Ana as a whole.   As part of their "Armory Plan," Defendant Cities would offer to provide daily transportation to the Armory shuttle sites (from which clients are driven to the Armory) and also transportation for individuals to return to their jurisdictions during the day.   In my vast experience with the Armory program, however, clients using the Armory remain in locations throughout the City of Santa Ana during the daytime, when the Armory is closed.   Without any absolute or legal requirement for the clients of the Defendant Cities to use this return transportation, and without any transportation being offered during nighttime hours if necessary, it is therefore likely that each client brought to the Armory will potentially remain in Santa Ana.

8.      For every client that remains in Santa Ana, the impacts to Santa Ana multiply.   While Santa Ana unselfishly treats each member of its homeless population, every additional individual requires the provision of homeless-related services to a larger number of people without any corresponding increase in the City's resources available for such services.   These services include without limitation law enforcement and fire department response and triage, provision of bed space at Santa Ana's low barrier shelter ("The Link"), and encounters with the City's multi-disciplinary Quality of Life Teams that work daily in Santa Ana to respond to encampments regularly arising in city parks and public rights of way.

9.      The cost of these services to Santa Ana are enormous.   In Fiscal Year 2018-19, Santa Ana spent $16.6 million on them.   In Fiscal Year 2019-20, Santa Ana's estimates it will spend $25.4 million.   As measured against the April 2019 Orange County Continuum of Care Point-in-Time Count of 1,769 homeless individuals in Santa Ana, this translates into $14,358 per individual.   Of these individuals, 830 are unsheltered.   If measured against this number, the cost increases to $30,602 per individual.   Accordingly, Santa Ana's costs can be expected to grow by at least these amounts for every additional homeless person in its borders.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of January, 2020 in Santa Ana, California.

_____
Kenneth Gominksy, Jr.

JOHN M. FUNK, STATE BAR NO. 204605
ASSISTANT CITY ATTORNEY
CITY OF SANTA ANA
20 CIVIC CENTER PLAZA M-29
P.O. BOX 1988
SANTA ANA, CALIFORNIA  92702
TELEPHONE:  (714) 647-5201
FACSIMILE:   (714) 647-6515
EMAIL:  jfunk@santa-ana.org

Attorneys for Plaintiff
CITY OF SANTA ANA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| City of Santa Ana, | Case No.: |
| Plaintiff, | **[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |
| v. | |
| County of Orange; City of Dana Point; City of San Clemente; City of San Juan Capistrano; and DOES 1-10. | |
| Defendants. | |

The Court, having considered Plaintiff City of Santa Ana's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and good cause having been shown:

IT IS HEREBY ORDERED THAT Defendant County of Orange and Defendant Cities of Dana Point, San Clemente, and San Juan Capistrano show cause before this Court on _____, 2020, at _____ a.m./p.m., or as soon

1

1    thereafter as counsel may be heard in Courtroom ___, why they and all of their

2    respective agents, servants, and employees, and those in active concert or

3    participation with them, should not be enjoined and restrained from transporting, or

4    otherwise engaging, arranging, or facilitating transportation for, individuals

5    experiencing homelessness in their municipal jurisdictions to the Santa Ana

6    Armory for purposes of shelter, pending entry of final judgment in this action.

7         Pending hearing on and resolution of the above Order to Show Cause,

8    Defendant County of Orange and Defendant Cities of Dana Point, San Clemente,

9    and San Juan Capistrano, and all of their respective agents, servants, and

10   employees, and those in active concert or participation with them, ARE HEREBY

11   RESTRAINED AND ENJOINED from transporting, or otherwise engaging,

12   arranging, or facilitating transportation for, individuals experiencing homelessness

13   in their municipal jurisdictions to the Santa Ana Armory for purposes of shelter.

14        This Order to Show Cause and supporting papers shall be served no later

15   than _____ on _____, 2020, and a proof of service shall be filed and delivered

16   to the Court no later than _____ on _____, 2020.

17        The following briefing schedule on the Order to Show Cause shall apply:

18        Any opposition papers shall be filed and served by overnight mail, e-mail,

19   facsimile, or hand-delivery no later than _____ on _____, 2020.

20        Any reply papers shall be filed and served by overnight mail, e-mail,

21   facsimile, or hand-delivery no later than _____ on _____, 2020.

22

23        IT IS SO ORDERED.

24

25

26   Dated: _____, 2020

27                                                    _____
                                                      United States District Judge
28

2